## CRATER *v.* McCORMICK.

1. In articles of agreement to erect a party wall it was stipulated, That if the lot of A (then incumbered by trust deed) should be sold under the trust deed before the wall was completed, and if the purchaser should elect to, and should finish the wall, the payment (one-half) provided for to be made to A, should be made to the purchaser. *Held,* in an action of covenant, that the covenant was in its nature personal and did not pass with the land of A to subsequent owners; also, that, under the facts in this case, A having procured the completion of the wall, could maintain his action on the covenant although he had parted with his title to the land.

2. The finding of a referee as to its conclusive effect stands as the verdict of a jury, and will not be disturbed if there is evidence to support it.

3. It is a rule of pleading that whatever has been admitted on both sides in the pleadings cannot be contradicted either by the subsequent pleadings or even by the verdict.

*Appeal from District Court of Arapahoe County.*

THE facts are sufficiently stated in the opinion.

Mr. V. D. MARKHAM and Mr. E. L. JOHNSON, for appellant.

Messrs. BROWNE & PUTNAM, for appellee.

THATCHER, C. J.   This is an action of covenant upon an agreement between Isaac L. McCormick, owner of lot five, block forty-six, East Denver, Vincent D. Markham, trustee, and Helena L. Beck, beneficiary named in a deed of trust conveying said lot, all parties of the first part, and George E. Crater, owner of lot four in said block, party of the second part.

The agreement relates to the building of a brick wall on a line between said lots.   The breach assigned is the failure of Crater to pay one-half of the value of the party wall in conformity with the agreement.

Before McCormick had entirely finished the party wall lot five was sold and conveyed by Markham as trustee to Helena L. Beck, the designated beneficiary, and by Helena L. Beck, six months after the trustee's sale, it was again sold and conveyed to John W. Rogers.

McCormick and wife, on the same day that Helena Beck conveyed lot five to Rogers, also made a deed to Rogers for the same premises.   The several deeds executed respectively by Markham, Mrs. Beck and by McCormick and wife purported to convey the entire party wall, including that part which was on Crater's premises.

The agreement contained, *inter alia*, the following stipulations:

" If the said lot of the said McCormick shall be sold under the trust deed aforesaid, before the said wall is completed, then if the purchaser of said property shall elect to finish and does finish said wall, then and in that event the payment above provided for to be made to said McCormick

shall on the same terms be made to the purchaser of said property instead of said McCormick."

Clearly, the purchaser referred to in this stipulation is the purchaser at the trustee's sale. Mrs. Beck was such purchaser. But she did not elect to finish the wall. In fact she did nothing toward its completion, and therefore can claim no right by virtue of that stipulation. As Mrs. Beck failed to elect to finish the wall, McCormick, as we interpret the indenture, was at liberty to carry out the agreement according to its terms, after the premises had been conveyed to Rogers, he consenting thereto.

The referee must have found that McCormick, by an agreement between him and Rogers, procured the completion of the wall. That McCormick, through the agency of Rogers, caused the wall to be finished, we think is fairly deducible from the evidence. Whether McCormick carried out his agreement with Rogers is a question with which we now have nothing to do. It is enough to know that by the procurement of McCormick the wall was completed.

It is, however, insisted that the covenant between the adjoining lot owners runs with the land, and that therefore McCormick having sold his premises is not entitled to sue. Leaving out of view the clause in the agreement in relation to the purchaser under the trust deed, for the reason that under the evidence it need not be considered, we are of the opinion that the covenant is in its nature personal and did not pass with the lot to subsequent owners. Although the authorities are somewhat conflicting upon this point, this we think is the better doctrine. *Weld* v. *Nichols*, 17 Pick. 538 ; *Ingles* v. *Bringhurst*, 1 Dallas, 367 ; *Hart* v. *Kucher*, 5 Serg. & Rawle, 1; *Todd* v. *Stokes*, 10 Penn. St. 155; *Block* v. *Isham et al.*, 28 Ind. 37.

Upon completion of the wall, if built according to agreement, Crater became personally liable for one-half its value.

Crater's office was on lot four and within ten feet of the party wall. He also lived on the same lot. Under his eye from day to day the work advanced. The division line be-

tween the lots was located by the city engineer at the instance of McCormick, and with reference to that line the wall was constructed. If there was even a trifling departure from the terms of the agreement, the evidence tends to show that it was not willful nor intentional. There is no pretense that there was a careless or negligent omission of duty. "To the satisfaction and acceptance of Crater" the wall, it is testified, was completed. While the work was in progress, Crater never intimated that there was the slightest deviation in any particular from the terms of the contract. If credit be given to the testimony of McCormick, the agreement—reference being had to the issues formed—was carried out by him in all respects *substantially* according to its terms, and more than this cannot ordinarily be required.

There was a conflict of evidence as to the true location of the division line, and of the party wall thereon, but considered as a whole, the referee's finding cannot be said to be unsupported by evidence.

The finding of a referee as to its conclusive effect stands as the verdict of a jury.

The demurrer to the sixth plea was properly sustained. It was drafted on the assumption that the covenant run with the land. Even if a remote subsequent grantee should be entitled to recover one-half the value of the wall, such recovery could only be had in the event that he should under the indenture *elect* to finish, and should in fact finish the wall. But there is no such allegation in the plea.

Nor was there error in overruling the motion for a new trial. The chief ground of the motion relied on was newly-discovered evidence, which it is claimed came to the knowledge of the defendant during the progress of the trial. This evidence relates to the thickness of the party wall between the second and third floors.

The pleadings were such that no advantage could be taken of this alleged defect. The thickness of the wall from its base to its summit was not put in issue. It is a rule that

"whatever has been admitted on both sides in the pleadings cannot be contradicted either in the subsequent pleadings or even by the verdict. For neither party can retract what he has before conceded on the record ; and the jury have no authority to find any other facts than such as are put in issue." Gould's Pleadings, § 168. Says Stephens on Pleadings, p. 217 : "The effect of such admission is extremely strong, for, first, it concludes the party, even though the jury should improperly go out of the issue and find the contrary of what is there confessed on the record, and, in the next place, it is to be remarked that the confession operates not only to prevent the fact from being afterward brought into question in the same suit, but is equally conclusive as to the truth of that fact in any *subsequent action* between the same parties."

But it is insisted that as the alleged failure to construct the wall of the required thickness between the second and third floors was unknown to the defendant until it was disclosed at the trial, the motion should have been allowed to enable the defendant to interpose an additional plea raising an issue under which the newly-discovered evidence might have been available.

By the use of ordinary diligence before the trial, the defendant could have ascertained the thickness of the wall and formed the issues accordingly.

Had he been half as vigilant in this respect as he was in his effort to prove that the plaintiff had mistaken the true division line by the fraction of an inch, there would have been no occasion to raise this question by a motion for a new trial.

The judgment of the court below is

*Affirmed.*